UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN BANKS,

             Petitioner,

   -vs-

MICHAEL P. McGINNIS,
Superintendent
             Respondent.
_____

**DECISION AND ORDER**
**No. 04-CV-0061T**

## I. Introduction

*Pro se* petitioner Kevin Banks has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 11, 1997, in New York State, Monroe County, convicting him, after a jury trial in Monroe County Court, of two counts of Murder in the Second Degree and one count of Robbery in the First Degree.

For the reasons stated below, the petition is denied.

## II. Factual Background and Procedural History

This habeas petition arises from an incident which occurred in the City of Rochester in the early morning hours of January 16, 1997 in which Terry Stevens ("the victim" or "Stevens") was stabbed to death in his home.

During the year prior to Steven's death, Petitioner had been one of a number of laborers who had performed remodeling work at Steven's home. Trial Transcript [T.T.] 313-17. Shortly after midnight on the day of the incident, Petitioner appeared at the

residence of his former boss, Anthony Marino ("Marino"), asking for money. T.T. 318. Marino refused to give him money and the Petitioner walked off. The victim's home was a few blocks away. T.T. 321-22. Phone records later revealed that a call had been placed from the victim's home to Petitioner's home at 1:08 am. T.T. 491. Acting on this lead, police contacted Petitioner and interviewed him at the police station. Petitioner initially admitted knowing the victim but denied involvement in his death, claiming he had not seen the victim since working at his home the previous year. When police suggested that he had been seen at the victim's home the night the victim was killed, Petitioner indicated he had stopped to see the victim, but only for coffee and then had left. T.T. 497-507. Petitioner denied using the phone while at the victim's house, but when confronted with the call to his home, he indicated he had placed the call. T.T. 513-14. Petitioner eventually admitted to stabbing the victim, but only in self-defense, when the victim attacked him after he refused the victim's sexual advances. Petitioner claimed that after drinking coffee together, the victim had grabbed Petitioner's genitals, produced sex toys, and requested anal and oral sex. Petitioner declined the victim's advances and tried to leave, but the victim grabbed him and a fight ensued. They eventually ended up in the victim's bedroom on his bed. Petitioner indicated he pushed the knife toward the victim's chest, and that he saw blood. On the way out

of the victim's home, the Petitioner removed various items, including a penny with a heart cut out of the middle of it and a VCR with remote control. T.T. 526-31. Shortly thereafter, Petitioner appeared at the home of his niece, Debra Lewin ("Lewin"), and indicated that he had had an argument with someone. Petitioner was bleeding from a cut on his finger. Lewin called Petitioner's wife to tell her that he was returning home, after which, Petitioner left. T.T. 330-33. He then met a girl on the street who asked him if he was selling the VCR. He indicated he was selling the VCR, and waited at the girl's house until another girl came and bought the VCR. Petitioner then went to a bootlegger, bought some gin, marijuana, and cigarettes, and walked around for a few hours before going home. T.T. 531.

The jury ultimately rejected Petitioner's self-defense theory at trial, and convicted Petitioner of intentional murder, felony murder and robbery. He was sentenced to concurrent, indeterminate terms of incarceration of 25 years to life on the murder convictions along with a concurrent, determinate term of 25 years on the robbery conviction.

The Appellate Division, Fourth Department, unanimously affirmed Petitioner's conviction in a memorandum decision. People v. Banks, 275 A.D.2d 993 (4th Dept 2000). The New York Court of Appeals denied leave to appeal. People v. Banks, 95 N.Y.2d 960 (2000). On or about October 9, 2001, Petitioner submitted a pro se

motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10(1)(h) on the ground that trial counsel failed to provide effective assistance.[1] A hearing was held, and Petitioner's claims were subsequently denied by Monroe County Court Judge Patricia D. Marks in a Decision and Order dated October 23, 2002. On or about January 6, 2003, Petitioner made a motion to appeal the Monroe Country Court Decision and Order, which was denied on May 7, 2003. On or about July 23, 2003, Petitioner filed a motion for a writ of error coram nobis, which was denied by the Appellate Division on October 2, 2003. People v. Banks, 309 A.D.2d 1311 (4th Dept. 2003). Petitioner sought leave to appeal to the New York Court of Appeals, which was denied on December 30, 2003. People v. Banks, 1 N.Y.3d 567 (2003). This petition for habeas corpus relief followed.

**III. Discussion**

**A.     Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d

---

[1] Petitioner submitted a lengthy C.P.L. § 440.10 motion containing, *inter alia*, numerous conclusory allegations related to the inefficiency of his trial counsel claim.

825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995)." The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (en banc), cert. denied, 464 U.S. 1048 (1984). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 277-78 (1992).

**B. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state

prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would

-6-

have decided the federal law question differently. Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### 1. Ineffective assistance of trial counsel

Petitioner claims he was denied effective assistance of trial counsel. Pet. ¶22A. Although Petitioner makes various claims associated therewith, the gravamen of his argument is that he received deficient representation at trial because counsel failed

-7-

to develop the issue of intoxication as a defense theory. The Monroe County Court denied this claim on procedural grounds for failure to raise the issue on direct appeal.[2] See Grey 933 F.2d at 120; C.P.L. § 440.10(2)(c). Petitioner has failed to show cause and prejudice for the default or actual innocence necessary to overcome the procedural bar. Assuming, *arguendo*, Petitioner was able to overcome the procedural bar, the claim is, in any event, without merit.

A Petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). A Petitioner must establish both that counsel's performance was deficient and that he was prejudiced as a result of counsel's errors in order to obtain relief on an ineffective assistance of counsel claim. Id. at 687.

A Petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

---

[2] The Monroe County Court denied Petitioner's C.P.L. § 440.10 motion; however, it specifically found that the intoxication issue was procedurally barred, and, in any event, without merit.

Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight). Even if a Petitioner can establish that counsel was deficient, he still must show that he was prejudiced. See Id. at 693-94. Here, Petitioner alleges that trial counsel failed to properly investigate and develop intoxication as a defense theory. Where the alleged error of counsel is failure to advise the defendant of a potential affirmative defense to the crime charged, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

At the outset, this Court notes that intoxication is not a complete defense to a criminal charge, but merely reduces the gravity of the offense by negating an element of the crime charged. People v. Harris, 98 N.Y.2d 452, 474 n.4 (2002). While the requisite level of intoxication "need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent, People v. Kastenhuber, 57 A.D.2d 655 (App. Div. 3d Dept. 1977), the degree of intoxication that a defendant must demonstrate is quite high. See People v. Monroe, 277 A.D.2d 598 (1st Dept. 2000) (rejecting contention that counsel should have argued intoxication defense; defendant's conduct in driving his vehicle away from the scene, his actions upon apprehension and his

ability to repeatedly recount his detailed version of the events "simply did not evince incapacitating intoxication.").

Petitioner claims that he was under the influence of both drugs and alcohol on the night in question,[3] which, according to Petitioner, would have negated the element of intent. However, it is highly unlikely that the jury would have found this negated or even reduced his intent since he was capable of walking to the victim's home, partaking in a physical fight with the victim, stabbing the victim multiple times, taking various personal belongings from the victim's home, and thereafter proceeded to sell some of those items. The record demonstrates that Petitioner's actions that night were intentional and the product of rational thought, and there is nothing in the record that suggests otherwise. Moreover, there appears to be no corroborating evidence of Petitioner's claim of intoxication, except for the testimony of one of the prosecution's witnesses who indicated that, shortly before the time of the incident, Petitioner arrived at his home and appeared "inebriated". T.T. 318. That witness, however, could not definitively say whether Petitioner was inebriated or simply agitated because his wife had kicked him out of their home.[4] Given the evidence at trial, this Court cannot find that trial counsel's

---

[3] At the time he was arrested, Petitioner gave a statement to police wherein he indicated that, on the night of the incident, he "had been drinking and smoking some weed, I might have been a little high." T.T. 527.

[4] Petitioner and his wife were having marital problems because Petitioner had impregnated an 18-year-old girl. T.T. 507, 526.

decision not to pursue an intoxication defense rendered his assistance constitutionally ineffective.

### 2. Ineffective assistance of appellate counsel

Petitioner also alleges he was denied effective assistance of appellate counsel. Pet. ¶22B. On or about July 23, 2003, Petitioner moved for a writ of error coram nobis, and the Appellate Division denied the motion. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001).

The Strickland standard of ineffective assistance of counsel applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994). Counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

Here, Petitioner cannot meet either prong of Strickland. He has failed to show that appellate counsel's representation was fundamentally defective, and there is nothing in the record that suggests appellate counsel's representation was ineffective.

Moreover, the thrust of Petitioner's argument is that appellate counsel failed to raise a claim of ineffective assistance of trial counsel (based on trial counsel's failure to raise an intoxication defense). Petitioner's argument appears to be based on a misunderstanding that the Monroe County Court determined that the issues his appellate counsel failed to raise on direct appeal -- one of which was the issue of pursuing an intoxication defense -- were meritorious[5]. Petitioner's appellate counsel "winnowed out" this weaker argument[6], and, instead, focused on five other arguments[7] that he submitted to the Appellate Division in a lengthy and detailed brief. Jones, 463 U.S. at 751. This Court finds appellate counsel's decision to do so was strategic in nature given

---

[5] Petitioner states: "C.P.L. § 440.10 Court determined contested issues should have been raised on Appeal, though meritorious, none were." Pet. ¶22B. This is a factual misstatement of the Monroe County Court's decision. The trial court determined that several of Petitioner's claims were procedurally defaulted under C.P.L. § 440.10(2)© because they could have been raised on direct appeal, but were not. The Court went on to find, in any event, each of these procedurally barred claims lacked merit.

[6] This argument had already been proffered in Petitioner's earlier C.P.L. § 440.10 motion and was rejected by the Monroe County Court by Decision and Order of October 23, 2002. Moreover, appellate counsel addressed the issue with Petitioner in a letter dated November 8, 2000, wherein he explained, in his professional opinion, why the issue of intoxication was irrelevant to Petitioner's case. Appellate counsel's letter states, in pertinent part: "I do not feel the issue of intoxication is relevant, because if you were intoxicated, it was voluntary. As long as you became intoxicated because of your own actions, intoxication cannot be used as a defense."

[7] These five arguments are as follows: the evidence adduced at trial was not legally sufficient to establish that the defendant was guilty of a robbery; that if the defendant was not guilty of robbery then he was not guilty of felony murder; the evidence adduced at trial was not legally sufficient as a matter of law to establish beyond a reasonable doubt the guilt of the defendant to the charge of murder in the second degree; the verdict of conviction to the charge of murder in the second degree was against the greater weight of the evidence; the court should reverse the conviction of murder in the second degree in the interest of justice.

the lack of evidence that Petitioner was intoxicated and/or high on drugs at the time of the commission of the crimes, and is the type of permissible discretionary decision-making envisioned by Strickland. Accordingly, the state court's adjudication of Petitioner's ineffective assistance of appellate counsel claim was not "contrary to" or "an unreasonable application" of clearly established federal law, and this claim is denied.

### 3. Insufficiency of the evidence

Petitioner alleges that the evidence introduced at trial was insufficient to support his conviction. Pet. ¶22C. He also argues that the verdict as to the intentional murder conviction was against the weight of the evidence. The Appellate Division unanimously affirmed Petitioner's conviction, finding that both charges were supported by legally sufficient evidence and that the verdict was not against the weight of the evidence with regard to the intentional murder crime.

The law concerning sufficiency of the evidence is well-settled: the reviewing court's inquiry is limited to asking whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord, e.g, People v. Contes, 60 N.Y.2d 620, 621 (1983). This sufficiency of the evidence "inquiry does not focus on whether the trier of fact made

the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).

A review of the proof submitted in this case establishes that there was sufficient evidence for the jury to find, beyond a reasonable doubt, that Petitioner intentionally killed the victim and that he entered the victim's home with the intent to steal property from him. Petitioner argues that the prosecution failed to introduce evidence at trial that showed he had formulated the requisite intent to commit murder and robbery. According to Petitioner's testimony, he killed the victim in self defense, and decided, spontaneously afterwards, to steal the victim's property on his way out of the victim's home. Petitioner's account of what transpired at the victim's home was the only "direct" account of the story offered to the jury at trial (there were no eyewitnesses to the crime). The prosecution offered sufficient proof at the trial to show that Petitioner's version of the facts was highly implausible given the circumstances, and that Petitioner had intentionally murdered and robbed the victim. The prosecution offered proof that, on the night in question, Petitioner appeared at another person's home earlier looking for money; that the victim was physically much smaller in stature and older than Petitioner; that the victim was stabbed several times in the chest; that the victim was stabbed so hard that the knife broke

off in his chest; that defense wounds were found on the victim's hands; that there were no signs of a struggle anywhere in the house except the bedroom; that a box of sex toys was never found in the victim's house; that Petitioner did not immediately flee after the victim was stabbed, but remained in the house and proceeded to take several of the victim's personal belongings, including a VCR that needed to be unplugged from the wall; and that, after leaving the victim's home, Petitioner sold the stolen items for drugs and alcohol.

Considering all of the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in its favor and deferring to the jury's assessment of Petitioner's credibility and the jury's resolution of conflicting accounts of the facts, this Court cannot say that the jury's guilty verdict was not rational. See United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (a court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt . . . view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor") (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983). Petitioner has failed to show that the evidence was insufficient and violated his due process right to protection against being convicted without proof of the

elements of the crime with which he was charged beyond a reasonable doubt.  Accordingly, Petitioner's insufficiency of the evidence claim must be denied.

To the extent that Petitioner alleges the verdict was against the weight of the evidence on the intentional murder conviction, this claim is not cognizable on habeas review.  Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review.  Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  C.P.L. § 470.15(5).  Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles.  People v. Bleakley, 69 N.Y.2d 490, 495 (1987).  Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review.  See U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Accordingly, there is sufficient evidence in the

record for a rational jury to determine that Petitioner was guilty beyond a reasonable doubt, as discussed above.

### 4. Sentencing

Petitioner alleges various[8] constitutional defects with his sentencing proceeding and the term of sentence imposed. Pet., ¶22D.

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948). A challenge to the term of sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, Petitioner was adjudicated a second violent felony offender.[9] See N.Y. Penal Law ("P.L.") § 70.04. He was sentenced to concurrent, indeterminate terms of incarceration of 25 years to life on the murder charges (P.L. § 125.25(1), (3)) (Class A-I felonies), and a concurrent, determinate term of 25 years on the

---

[8] Petitioner sites numerous alleged improprieties of the sentencing court under ¶22D of his Petition to support his claim. He originally raised these claims in his C.P.L. § 440.10 motion. Petitioner sites the alleged improprieties again in his habeas petition for purposes of showing that Judge William H. Bristol, the sentencing judge, was biased in his decision-making, and that such bias was reflected in the harsh sentence he ultimately handed down to Petitioner.

[9] The prior conviction was for Attempted Burglary in the Second Degree. He was convicted of said crime on October 28, 1992, and received a sentence of two and half to five years in the New York State Department of Corrections. T.T. 2.

-17-

robbery charge (P.L. § 160.15(1)) (a Class B felony). Petitioner received the maximum term for the murder charges. P.L. § 70.00(2)(a) (maximum term for Class A felony shall be life imprisonment). And, the determinate term of sentence on the robbery charge falls within the statutory range for second violent felony offenders. P.L. § 70.04(3)(a) (term of determinate sentence for second violent felony offender for Class B felony must be at least ten years and not exceed twenty-five years). Thus, Petitioner's claim does not present a federal constitutional question cognizable on habeas review and must be denied.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York,

within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   August 18, 2009
         Rochester, New York